BLANCHE, Justice.
Southwest Louisiana Electric Membership Corporation (SLEMCO) filed a complaint with the Louisiana Public Service Commission claiming that Central. Louisiana Electric Company (CLECO) extended an electric line to serve the Martin Timber Company at LeMoyen, Louisiana, in viola *1202 tion of La.R.S. 45:123 and the Commission’s General Order of March 12, 1974, “Duplication of Electric Service.” After a hearing, the Commission, by Order No. U-15272, ordered that the customer had the right to select the utility of his choice. SLEMCO appealed the Commission’s order to the Nineteenth Judicial District Court, Parish of East Baton Rouge. The district court affirmed the Commission’s order and SLEMCO appeals that ruling directly to this court. La. Const, art. IV, § 21(E); La.R.S. 45:1192.
The property in question is actually owned by Martco Partnership, a partnership comprised of three corporations; Martin Timber Company, Inc., Martin Home Centers, Inc., and Roy 0. Martin Lumber Company, Inc. The Roy 0. Martin Lumber Company, Inc. holds a 60% interest in Mart-co Partnership while the other two corporations each hold a 20% interest. The controversy arose when Martco Partnership approached CLECO about the possibility of providing electric service to a waferboard plant that Martco was constructing on the property. No formal contracts were perfected by the parties,, however, CLECO did extend a line from their 34.5 KV line along U.S. Highway 71, which runs adjacent to the Martco property, onto the property a distance of 851 feet at an approximate cost of $3,000 to provide power for construction of the waferboard plant. It is the extension of this line which SLEMCO contends is in violation of La.R.S. 45:123 and the Commission’s General Order of March 12, 1974.
The evidence shows that both CLECO and SLEMCO maintain electric lines along U.S. Highway 71 on common poles. CLE-CO maintains a 34.5 KV line while SLEM-CO maintains a 13.2 KV line. SLEMCO is currently involved in upgrading its 13.2 KV line to 24.9 KV. The property involved in this dispute lies adjacent to U.S. Highway 71. For many years SLEMCO has maintained an extension of their 13.2 KV line on the property involved to service the office building of Roy O. Martin Lumber Company, Inc. and to service the Haynes Brothers Lumber Company mill, a lessee of Martco Partnership. Additionally, prior to 1980, SLEMCO provided service to a well pump on the property which has now been disconnected. The meter on the CLECO extension is located approximately 490 feet from the closest SLEMCO service on the property. Both SLEMCO and CLECO officials testified before the Commission that SLEMCO’s existing 13.2 KV line, located along U.S. Highway 71 and on the property, is inadequate to service the waferboard plant now under construction.
SLEMCO’s contention that La.R.S. 45:123 has been violated by CLECO is without merit. This court examined La.R.S. 45:123[1] in South Louisiana Electric Cooperative Association v. Louisiana Public Service Commission, 309 So.2d 287 (La.1975) and interpreted the statutory term “point of connection” to mean the actual meter connection. As the distance between the actual meter connection of CLECO’s 34.5 KV line extension and the nearest SLEM-CO electric line is approximately 490 feet, La.R.S. 45:123 does not apply to this case.
SLEMCO’s contention that CLECO’s extension of service for the construction of the waferboard plant is in violation of the Commission’s General Order of March 12, 1974, “Duplication of Electric Service” is equally without merit. The Commission’s General Order of March 12, 1974 states, in pertinent part:

It is the opinion of this Commission that in order to effect economies in the service of electricity, and, thus, keep rates therefor within reasonable bounds, uneconomic and wasteful practices should be prohibited. It is determined that the paralleling and duplication of existing transmission or distribution lines as defined in Louisiana Revised Statutes *1203 45:123 or the extensions of either by electric public utilities to serve customers readily accessible to like facilities of an electric public utility already providing service in the immediate area is not in the public interest, and that such practices ultimately lead to wasteful competition and unwise expenditures and investments which become a burden upon the rate payers.
It is recognized that while in some areas there is not clear line of demarcation between the service area of electric public utilities, for the purpose of this order, the service area of electric public utility is that area which, as a result of the existence of transmission and distribution lines, is readily accessible by economically feasible extensions from such existing facilities. This necessarily includes customers already receiving service. It is, accordingly, ordered.
That no extension of electric transmission or distribution lines shall be made by an electric public utility that will duplicate the transmission and distribution lines (as defined in Louisiana Revised Statutes 45:123) of another like utility, nor shall extensions be made to serve customers that could be served from such electric public utility facilities already in existence in an economic and justifiable manner. (Emphasis added).
SLEMCO’s representative before the Commission admitted that SLEMCO’s 13.2 KV facility already in existence is inadequate to service the waferboard plant. Since the Martco’s waferboard plant does not constitute a customer “that could be served from such electric public utility facilities already in existence”, the Commission was correct to reject SLEMCO’s arguments in this regard.
The Commission in this case gave SLEM-CO every benefit in making its determination of allowing the customer to select the electric utility to serve the wafer plant. The Commission presumed that SLEMCO’s proposed upgrading of its 13.2 KV line to a 24.9 KV line would be completed. Assuming that both utilities would then have adequate facilities to serve the waferboard plant, the Commission found that the cost to serve the plant would be the same for each as the route to serve the point of connection would be the same. Examining SLEMCO Exhibit No. 1, a map depicting existing electric lines in the area, it is apparent that SLEMCO’s upgraded electric line would more economically extend to the point of connection for the plant by following the 851 foot path that CLECO’s extension took as opposed to upgrading the 1900 feet of existing SLEMCO extension to the property and then extending the additional 490 feet from the Roy O. Martin Lumber Company office to the waferboard plant point of connection.[2] Thus, the Commission’s finding that both utilities would follow the same path to provide service is supported by SLEMCO’s own exhibit.
In general, an order of the Public Service Commission should not be overturned on review unless it is shown to be arbitrary, capricious, or abusive of the Commission’s authority. One attacking a Commission order bears the burden of demonstrating that it is defective, because the order is presumed valid.and the Commission’s decisions will not be disturbed unless found to be clearly erroneous or unsupported by the evidence. Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497 (La.1979). In this case, the Commission’s order is supported by the evidence, thus this court will not set such an order aside.
Additionally, an order of the Commission whereby it orders that the customer has the right to select which utility will service him is a valid exercise of the Commission’s authority. This court has affirmed similar orders in the past. Louisiana Power & Light Company v. Louisiana *1204 Public Service Commission, 324 So.2d 427 (La.1975); Louisiana Power & Light Company v. Louisiana Public Service Commission, 322 So.2d 133 (La.1975).
DECREE
For the reasons assigned, the judgment of the district court affirming Order No. U-15272 of the Louisiana Public Service Commission is affirmed.
AFFIRMED.

. La.R.S. 45:123 provides, in pertinent part:
No electric public utility shall construct or extend its facilities, or furnish, or offer to furnish electric service to any point of connection which at the time of the proposed construction, extension, or service is being served by, or which is not being served but is located within 300 feet of an electric line of another electric public utility, ...

. The cost of this 490 foot extension was found to be approximately $2,300. If SLEMCO were to use such an extension, the difference in cost between this extension and the CLECO extension is de minimis when the cost of the required transformer to service the plant is added in. Thus, the Commission’s finding that the cost is the same for each utility is supported by the evidence.