KNOLL, Justice.
hThe Louisiana Public Service Commission (Commission) appeals from a district court judgment which reversed the Commission’s denial of Eagle Water, Inc.’s (Eagle) request for a rate increase. Pursuant to La. Const. Ann. art. IV, § 21(E)[1] this court has direct appellate jurisdiction to consider the judgment of the district court. After considering the record in this matter and the applicable law, we affirm the district court, in part, and reverse, in part.
FACTS AND PROCEDURAL HISTORY
Eagle is a company which provides water and wastewater services to customers in Caddo and Bossier Parishes. It had 839 water customers, only one of which is a commercial customer. Its had 1,246 wastewater customers, 10 of which are | ^commercial customers. On October 12, 2004, Theresa A. Knight (Knight), president of Eagle, applied with the Commission, seeking an increase in water and wastewater rates for residential and commercial customers. Eagle’s application was published in newspapers in the parishes where it provided services. No one intervened or opposed Eagle’s application.
After the Commission’s audit staff reviewed Eagle’s requests, it determined the requested increases would result in a 10.45% rate of return, a return it deemed fail' and reasonable based on Eagle’s rate base and operational needs. Accordingly, the audit staff recommended a majority of Eagle’s requested increases. The result equated to an increase in water revenues from $215,720.80 to $253,321.63 and sewer revenues from $304,326.00 to $375,600.00.
In due course, Eagle’s rate increase request was assigned to administrative law judge, Valerie Seal Meiners, and a hearing was convened on June 10, 2005. The audit staff recommended that Eagle be granted the increases it requested with regard to recurring water and sewer rates, but that Eagle be granted only some of the increases as to non-recurring fees. Eagle did not appear at the hearing, opting instead to submit Knight’s affidavit and stipulation that essentially listed the proposed increases and agreed to the audit staff recommendation. The administrative law judge produced a report of the proceedings, stating in part:
In light of the Applicant’s agreement to the Staffs recommendations, there are no disputed issues to be considered and addressed by the administrative law judge in the form of a recommendation. Instead, this Report of Proceedings provides a summary of the proceeding and of the proposed increases recommended by the Commission Staff and agreed to by the Applicant. Attached to the Report are a copy of the Commission Staffs Audit Memorandum, which contains the specifics of the Staffs analysis and recommendations, and a copy of the Affidavit and Stipulation, which confirms the company’s agreement with the Staffs recommendations.
*31 All parties are advised that the Proposed Stipulation of the parties |swill be considered and voted on by the Commissioners at an upcoming monthly Commission meeting.
On September 14, 2005, the Commission considered the matter at its Business and Executive Session. On motion of Commissioner Foster Campbell, seconded by Commissioner C. Dale Sittig, and unanimously adopted, the Commission denied the proposed stipulation, thereby denying Eagle’s requested rate increase. On October 14, 2005, the Commission issued Order No. U-28293 which formally denied the stipulation entered into by the audit staff and Eagle, and further denied Eagle’s request for a rate increase.
Thereafter, Eagle’s president, Knight, submitted a letter, requesting a rehearing. The letter explained the increase was to obtain funds to cover $296,398 for repairs and improvements needed for the systems, including $68,473 for critical repairs. Knight’s letter further pointed out that most of these repairs were earmarked for newly acquired water and wastewater systems that previous owners had neglected. The letter stressed the necessity to make the repairs as soon as possible to prevent emergency breakdowns that could result in non-compliance with the Louisiana Department of Environmental Quality (DEQ) and the Louisiana Department of Health and Hospitals (DHH).
On November 9, 2005, the Commission considered Eagle’s request for rehearing. At the hearing, Knight outlined the following justifications for the rate increases sought: (1) extensive repair and renovation requirements needed to comply with DHH and DEQ; (2) the need to provide a $25,000.00 letter of credit for each sewer system to comply with DEQ mandates; (3) the increase in general operating expenses such as electrical, fuel and insurance. The Commission denied Eagle’s request for rehearing and issued Order No. U-28293A on December 12, 2005, formalizing that denial.
|4In accordance with La.Rev.Stat. Ann. §■45:1.192,[2] Eagle filed a petition for appeal in the 19th Judicial District Court. Eagle’s petition alleged its requested rate increases were reasonable and just and that the Commission was arbitrary and capricious in denying its request. The Commission answered Eagle’s appeal, denying its order was arbitrary and capricious.
The district court conducted a hearing on Eagle’s appeal and reversed the Commission’s ruling. In its reasons for judgment, the court stated:
No doubt great weight is accorded any decisions and rules enunciated by the Public Service Commission in their *32 area of expertise, which of course is regulation and rate making, but it is not law.
The Court is of the opinion that based upon the evidence in the record, the Public Service Commission acted arbitrarily, capriciously, and in clear abuse of its discretion and power. The Court is of the opinion that the record reflects by more than a preponderance of the evidence that the rate request was reasonable and necessary for compliance with other executive branch agencies, particularly the Department of Environmental Quality and EPA, in order to bring that utility up to standard. Therefore, the court hereby reverses the decision of the Public Service Commission and orders that rate increase be allowed in accordance with the evidence in the record.
The trial court judgment specified the Commission acted arbitrarily and capriciously | Bm denying Eagle’s requested rate increase. The judgment further provided as follows:
Louisiana Public Service Commission Orders U-28293 and U-28293A are hereby reversed and remanded to the Commission, and the Commission shall adopt the rate agreement stipulated to by the Commission Staff and Eagle Water, Inc.
The Commission then perfected a devolu-tive appeal[3] to this Court.
DISCUSSION
The Commission contends the district court erred in finding its orders rejecting Eagle’s rate increase request were arbitrary and capricious. Relying on Gulf States Util., Inc. v. Louisiana Public Service Commission, 578 So.2d 71 (La.1991), it argues that although its audit staff recommended Eagle’s requested rate increase, it was not bound to accept that staff opinion.
Eagle concedes the Commission is the absolute decision maker in a rate case, but submits the Commission’s decision in the present case was not reasonably derived from the evidence. It further rejects the Commission’s contention that the district court exceeded its authority when it ordered implementation of the new rates.
Article IV, § 21(B) of the Louisiana Constitution establishes the Commission’s powers and duties, stating:
The Commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
This provision gives the Commission constitutional jurisdiction over public utilities and has been interpreted as granting the Commission independent and | ^plenary power to regulate public utilities. Gulf States Utilities Co. v. Louisiana Public Service Com’n, 92-1185 (La.3/17/94), 633 So.2d 1258, 1263. Commenting on the plenary powers the Commission is given by this constitutional provision, we stated in Bowie v. Louisiana Public Service Com’n:
The Commission’s power in this regard is as complete in every respect as the regulatory power that would have been vested in the legislature in the absence of Article IV, Sec. 21(B). Therefore, the *33 legislature’s acts or omissions can not subtract from the Commission’s exclusive, plenary power to regulate all common carriers and public utilities.
Bowie, 627 So.2d 164, 166 (La.1993) (citations omitted).
The Commission is created to exercise regulatory police power over public utilities, to compel the performance by utilities of their public duties, and to safeguard the interests of the utilities and the public. Morehouse Natural Gas Co. v. Louisiana Public Service Com’n, 242 La. 985, 140 So.2d 646, 651-52 (1962). Consequently, the Commission is vested explicitly and implicitly with the constitutional power necessary to perform its function of regulating public utilities through the adoption and enforcement of reasonable rules and orders fundamental to these purposes. Bowie, 627 So.2d at 166.
This Court has further held the Commission’s orders are presumed valid. Gulf States Utilities Co., 578 So.2d at 78. As a general rule, an order of the Commission should not be overturned on review unless it is shown to be arbitrary, capricious, abusive of its authority, or not reasonably based upon the evidence presented. Dixie Electric Membership Corporation v. Louisiana Public Service Commission, 441 So.2d 1208, 1210 (La.1983); Radiofone, Inc. v. Louisiana Public Service Commission, 573 So.2d 460, 461 (La.1991). A Commission order is arbitrary and capricious only if based upon an error of law or not reasonably derived from the record evidence. Herman Brothers, Inc. v. Louisiana Public Service Commission, 564 So.2d 294, 297 (La.1990). While a ruling of the Commission may be deemed arbitrary unless supported by some factual evidence, the function of the court on judicial review is not to re-weigh and re-evaluate the evidence or to substitute its judgment for that of the administrative agency constitutionally entrusted with regulation of the matter. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666, 669 (1972). This standard of review, however, is restricted to the Commission’s assessment of the facts only in this case. Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public Service Com’n, 95-1932 (La.4/8/96), 671 So.2d 908, 912.
Our review of the record shows there were no reasons explained at the Commission’s meeting on September 14, 2005, for the denial of Eagle’s rate increase request. It was not until this matter was considered on rehearing that Commissioner Foster Campbell, the Commissioner from the Caddo/Bossier area, noted three primary objections to Eagle’s request for a rate increase.[4] First, Commissioner Campbell noted twenty percent of the requested annual increase was earmarked for a salary increase for Knight, the owner of Eagle. Second, he pointed out that if the water rate increase were approved, Eagle’s water rate would be the second-highest compared with the seven other Caddo/Bossier companies, and the proposed sewer rate would be the highest of the thirteen companies in the same area. Third, the Commissioner then stated he could not support giving Eagle an *34 increase in rates, particularly because it had received an increase just two years prior. We now turn to the record |8to evaluate whether the Commission’s determination was supported by some factual evidence.
Paragraph 17 of one of Eagle’s attachments to its application for a rate increase shows that Knight is not only the owner of Eagle, but she also serves as its office manager. It further shows Eagle employs only one other clerical person other than Knight. The attachment states due to Eagle’s negative financial condition Knight draws a minimal salary and did not draw any salary from 1992-2000. Although we do not comment on the salary sought, the evidence does bear out a basis for including such an element in Eagle’s request. One of the principal purposes of rate-making is to establish rates at a level which gives the regulated industry adequate revenues to pay its legitimate expenses. South Central Bell Tel. Co. v. Louisiana Public Service Commission, 373 So.2d 478, 480 (La.1979). There is no evidence in the present case to show that the inclusion of Knight’s salary was not a legitimate expense.
Similar commentary is appropriate for the objection made to the resulting ranking of water and sewer rates in the region near Eagle’s geographic delivery area. The evidence shows all but two of the water companies in this area have not received a rate increase in eight to twelve years. Likewise, with regard to the $25.00 sewer rate Eagle sought, some rates of like companies in the area are already at that rate. The Commission begs the question when it rejected Eagle’s requested rate increase, stating Eagle would have the highest rate. Rather, regardless of the ultimate ranking of the area’s water and sewer providers, the focal point is whether the evidence justified Eagle’s rate increase, i.e., are there factors such as added public regulations,[5]19needed repairs or renovations, or the acquisition of additional utility systems, to support a rate increase request. The evidence shows the existence of just such factors involved in Eagle’s rate increase request.
Finally, there is no basis for the objection that Eagle was not entitled to a rate increase because it had received one on April 19, 2002, more than three years from the date of the Commission’s rehearing on Eagle’s request for another rate increase. Nothing has been brought to our attention that restricts the frequency a utility company may seek a rate increase and we have found no such limitation.
A regulatory body such as the Commission is entitled to use its own judgment in evaluating evidence concerning a matter within its area of expertise, and is not bound even by uncontradicted opinion testimony of experts. Baton Rouge Water Works Co. v. Louisiana Public Service Commission, 342 So.2d 609, 611 (La.1977); South Central Bell Tel. Co. v. Louisiana Public Service Commission, 373 So.2d 478, 486 (La.1979). More particularly, as the Commission points out, it is not even bound to accept its own audit staffs expert opinion about a requested rate increase. Gulf States Util., Inc., 578 So.2d at 106. Notwithstanding those well established principles, if the Commission chooses to act in this manner, the record evidence must nonetheless exist to support its deci *35 sion. A review of this record shows no such support exists. Accordingly, we find no error in the district court’s decision, finding the Commission’s denial of Eagle’s rate increase was arbitrary and capricious.
In the alternative, the Commission argues that if the district court judgment is affirmed as to its finding of arbitrariness and capriciousness on the part of the Commission, the district court nonetheless overstepped its authority when it remanded the case to “adopt the rate agreement stipulated to by the Commission Staff and Eagle Water, Inc.” We agree.
Under La. Const. Ann. art. IV, § 21, the Commission has exclusive jurisdiction in the first instance to fix or change any rate to be charged by a public utility and the courts are without power to fix or change rates until that commission has acted. Louisiana Power & Light Co. v. Louisiana Public Service Com’n, 523 So.2d 850, 856 (La.1988). Although courts are statutorily permitted to “change, modify, alter, or ... set ... aside [orders of the Commission], as justice may require,” La. Rev.Stat. Ann. § 45:1192, that statutory standard of review may not supercede or abrogate the constitutional scheme in which plenary ratemaking authority is delegated to the Public Service Commission. See La. Const. Ann. art. IV, § 21; Gulf States Utilities Co., 578 So.2d at 100; South Central Bell Telephone v. Louisiana Public Serv. Comm’n, 340 So.2d 1300, 1301 (La.1976) (holding that under the state constitution, the Commission has exclusive jurisdiction in the first instance to fix or change any rate to be charged by a public utility, and courts are without power to fix or change any rate until the Commission has acted). The Commission’s primary ratemaking authority was acknowledged in Louisiana Power & Light, 523 So.2d. at 856, in which this Court, although finding that the Commission’s failure to establish some kind of deferral plan was unreasonable, held the district court usurped the Commission’s constitutionally protected ratemaking authority when it chose one of the options open to the Commission. Here, the district court remanded the case to the Commission for adoption of the rate agreement to which the Commission audit staff and Eagle stipulated.
Eagle’s argument that the district court did not fix the rate is without merit. When the district court remanded the case to the Commission to adopt the rate agreement the Commission audit staff and Eagle stipulated to, it implicitly fixed the rate. Such authority does not lie with the district court. It bears remembering that Inalthough the Commission’s audit staff and Eagle entered into a stipulation and the administrative law judge initially accepted the stipulation for formal presentation to the Commission, a review of the initial hearing shows the Commission formally rejected that stipulation. Although this Court has sanctioned the Commission’s use of hearing examiners, we have carefully explained that such procedure does not constitute the Commission’s abdication of its decision-making duties specifically authorized in the Louisiana Constitution. See La. Const. Ann. art. IV, § 21; Gulf States Utilities Co., 578 So.2d at 81-82. To bind the Commission to a stipulation it never agreed to would be tantamount to the usurpation of the Commission’s sole constitutional authority to set rates. More particularly, as the administrative law judge’s reasons state, the stipulation encompassed the audit staffs recommended proposed rate increases; as such the stipulation between the audit staff and Eagle remained a recommendation until it would be considered and voted upon by the Commission. Accordingly, we find the district court should have simply remanded *36 the case to the Commission for determination of Eagle’s rate increase application.
In making this determination, we further find no merit to Eagle’s contention that a remand would be contrary to the Commission’s constitutional mandate, requiring a rate to be put into place within one year of the filing for rate relief if the Commission has not acted. La. Const. Ann. art. IV, § 21(D)(2) requires the Commission to render a full decision on each application, petition, and proposed rate schedule within twelve months after the effective filing date. La. Const. Ann. art. IV, § 21(D)(3) further provides, “[i]f no decision is rendered on the application within twelve months after such filing date, the proposed increase may be put into effect[J” In the present case, the record shows Eagle submitted its application to the Commission on October 12, 2004. It further shows the Commission considered and | ^rendered an adverse decision on Eagle’s application on September 14, 2005. This chronology shows the Commission acted within the twelve month period provided in La. Const. Ann. art. IV, § 21.
DECREE
For the foregoing reasons, the judgment of the district court is affirmed in part as to its finding the Commission was arbitrary and capricious when it denied Eagle’s application for rate increase; however, the district court judgment is reversed in part when it remanded the case to the Commission to “adopt the rate agreement stipulated to by the Commission Staff and Eagle Water, Inc.” Accordingly, this matter is remanded to the Commission to determine the appropriate rate increase sought in the application of Eagle Water, Inc.
AFFIRMED, IN PART; REVERSED, IN PART; AND REMANDED TO THE LOUISIANA PUBLIC SERVICE COMMISSION

. La. Const. Ann. art. IV, § 21(E) provides:
(E) Appeals. Appeal may be taken in the manner provided by law by any aggrieved party or intervenor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the sú-preme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.

. La.Rev.Stat. Ann. § 45:1192 provides:
If any of the persons, mentioned in R.S. 45:1191, or other party in interest, shall be dissatisfied with any order entered by the commission, adopting, fixing, changing, altering, or modifying, any rate, classification, rule, charge, or general regulation, and no application for rehearing is filed, the dissatisfied person may, within forty-five days after the order made by the commission becomes effective, file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of. When a timely application for a rehearing has been made at the commission, the time for appeal does not commence until the date of the commission order disposing of the rehearing application. All such cases shall be tried in the same manner as civil cases and shall be given precedence over all other civil cases in the court, and shall be heard and determined as speedily as possible. The court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require.

. At oral argument, the Commission advised the Court that by letter dated June 6, 2006, it accepted the water and sewerage service rates Eagle filed on May 30, 2006. It further advised Eagle that the acceptance was made subject to refund, including interest if this Court ultimately affirmed the Commission’s original decision in Order U-28293.

. The purpose underlying the requirement that an agency must provide a statement of findings as to disputed issues and reasons for its determination is “to enable a reviewing court to determine with some measure of confidence whether or not the ratemaking authority, which still remains in the Commission, has been exercised in a manner which is not arbitrary, capricious or unreasonable.” Gulf States Utilities Co. v. Louisiana Public Service Com’n, 578 So.2d 71, 83 (La.1991), quoting Central Louisiana Electric Co. v. Louisiana Public Service Comm’n, 437 So.2d 278, 279 (La.1983).

. The attorney for the Commission commented at the November 9, 2005 rehearing that addressed the DEQ and DHH compliance problems. When Commissioner Campbell queried the Commission's attorney, asking whether the other twelve sewer and. water companies in the Shreveport/Bossier area needed rate increases, the Commission's attorney responded affirmatively.