MARCUS, Justice.
This case involves the Louisiana Public Service Commission’s grant of a certificate of public convenience and necessity to Well-Vac, Inc., conferring statewide authority as a common carrier to transport certain special commodities over irregular routes.
An application for the aforesaid certificate was filed by Well-Vac with the Commission on April 8, 1981. As amended on April 22, 1981, the application sought a common carrier of special commodities certificate authorizing transportation “by vacuum truck of any and all commodities used in, produced or demanded by industrial operations, oil and gas field operations, and marine and pipeline operations, specifically including any waste products, from, to and between all points in the State of Louisiana.” After publication of notice of hearing by the Commission, an opposition and protest was filed by the Vacuum Truck Carriers of Louisiana, its individual member carriers, and certain non-member carriers. A hearing was held before Commissioner Thomas E. Powell and Examiner James W. Henderson on September 1,1981. Subsequent to this hearing, application was considered at an open session of the full Commission held September 21, 1981. The Commission, by a 3-2 vote with Commissioners Powell and George J. Ackel dissenting, found that in view of the evidence present in the record, “the public convenience and necessity require, and would be materially promoted by the granting of the authority sought.” Accordingly, by order dated September 30, 1981, the application was approved conditioned upon the grantee’s compliance with the “laws and rules and regulations of the Commission bearing thereon.” Commissioner Powell, in his written reasons for dissenting, stated:
I respectfully dissent because there is no evidence whatsoever in the record to prove that the public convenience and necessity would be served by the grant of this authority. The two witnesses testifying in support of applicant who utilize vacuum truck common carriers confirmed that adequate service is provided by the several authorized carriers domiciled in the area and the third witness is a lease operator to a regulated motor carrier who had only hearsay testimony. To the contrary, the 13 authorized carriers appearing in opposition expressed concern over the lack of business with some carriers realizing only 20% to 25% utilization of equipment.
Additionally, there was no testimony at all in support of transportation of industrial waste.
After the order became effective, Louisiana Tank, Inc. and eleven other vacuum truck carriers with certificates of authority from the Commission filed a petition in the *1126 district court pursuant to La.R.S. 45:1192[1] setting forth their cause of objection to the order of the Commission. The petition alleged that the decision of the Commission was arbitrary and capricious and that no showing was made that the public convenience and necessity would be materially promoted by the granting of the certificate. The Commission answered generally denying the allegations of the petition. Well-Vac intervened uniting with the Commission in resisting Louisiana Tank’s action. After a pre-trial conference on July 7,1982, Judge Doherty complied with a request by Well-Vac and remanded the matter to the Commission to take additional evidence. Pursuant to this order, a second hearing ' was held before Examiner Henderson alone on September 1, 1982. By order dated November 12, 1982, the Commission found no evidence was introduced at the second hearing that would alter its initial order of September 30, 1981. Accordingly, over the dissents of Commissioners Powell and Ack-el, the Commission’s original order was affirmed.
The matter was again brought before Judge Doherty who, after considering all of the testimony adduced at both hearings, reversed the orders of the Commission. According to the court, “the evidence produced before the Commission ... is wholly inadequate to justify the issuance of a certificate to the applicant.” The Commission and Well-Vac appealed to this court pursuant to La. Const, art. 4, § 21(E).[2]
On appeal to this court, Well-Vac’s primary contention[3] is that the district court erred in holding that there was insufficient evidence to support the Commission’s finding that the public convenience and necessity would be materially promoted by the granting of the certificate sought by Well-Vac.
La.R.S. 45:164 provides in pertinent part: No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of pub- *1127 lie convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.
The principles are well settled for judicial review of Commission orders granting certificates of public convenience and necessity under this provision. The applicant has the burden of clearly showing that the public convenience and necessity would be materially promoted by the issuance of a certificate to it. The orders of the Commission and of other administrative bodies exercising discretionary authority are accorded great weight and will not be overturned in the absence of a showing that the administrative action is arbitrary and capricious. Upon judicial review, a court will not upset Commission orders unless, after looking at the evidence, it concludes that the Commission could not have reasonably concluded that the applicant has “clearly shown that the public convenience and necessity would be materially promoted” and that the Commission’s action was therefore arbitrary and capricious. Florane v. Louisiana Public Service Commission, 433 So.2d 120 (La.1983); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Commission, 396 So.2d 1265 (La.1981).
The record reflects that, at the original hearing on September 1, 1981, Well-Vac presented the testimony of three supporting witnesses. The first was Mr. Robert Cornell, the secretary/treasurer of Drew Cornell, Inc., a Lafayette-based independent producer and consultant in the oil and gas industry. Mr. Cornell testified that Drew Cornell regularly requires the services of vacuum trucks to transport salt water and drilling mud in the southwest Louisiana area. He stated that, although he is not personally responsible for obtaining transportation during normal operations, he does acquire vacuum trucks on an emergency basis. The certified vacuum truck services with which Mr. Cornell was familiar are Holston, Guillory and Pru-dhomme. • He testified that he did not know whether Drew Cornell had utilized any of the other carriers. When asked if the carriers with whom Drew Cornell dealt had provided adequate service, Mr. Cornell’s response was, “Yes.” His testimony about alleged service failures consisted merely of vague references to difficulty obtaining a truck “from time to time.” He was unable to provide documentary evidence of these failures or give specific instances or dates.
Well-Vac’s second supporting witness was Mr. Carl Martin, a production foreman employed by Conoco, Inc. He testified that he was responsible for securing vacuum trucks for use in the southwest Louisiana area to haul salt water and work over fluids such as mud. When asked to name the carriers he had used, he named approximately seven certified vacuum truck services. As Mr. Cornell had done previously, Mr. Martin testified that the carriers he had been using have been providing completely adequate service. When asked on direct examination if he knew of any “specific service failures that you have had, or problems when you couldn’t acquire any trucks,” he responded, “None that I can document.”
The final witness in support of the application was Mr. Larry Gautreau of Larry’s Trucking Service, Inc. Mr. Gautreau stated that he does not “have anything to do with the vacuum truck business.” He later qualified this statement by adding that he frequently refers people to vacuum truck services, but he is not personally involved in utilizing or soliciting these services. Mr. Gautreau then described several instances in which he had been told that the vacuum carriers to whom he had referred customers could not provide service. This testimony was only on a proffer because Commissioner Powell ruled that it was inadmissible *1128 hearsay testimony. Additionally, it should be noted that his contract carrier authority from the Commission had been suspended for about two years and he had been fined $20,000 for violations of Commission rules.
In protest to the application, thirteen certified vacuum truck carriers were present and testified through authorized representatives against Well-Vac’s application. All of these witnesses stated that they needed more business; in fact, most of the carriers were operating below 50% utilization. The testimony was unanimous that either the carriers have never had any problems handling the business tendered to them or, if there was a temporary shortage of trucks when a customer needed one quickly, service has always been immediately provided by a competitor after referral from the original carrier. Seven of the carriers had provided service for Conoco and four had worked for Drew Cornell; none had received complaints about their service and all expressed a desire to do further business with Conoco and Drew Cornell.
At the second hearing before Examiner Henderson, Well-Vac offered the testimony of two additional supporting shippers. The first was Ivan West, president of Harris Well Service, Inc. of Eunice. Mr. West testified at the first hearing as a representative of the applicant because, at that time, he owned 25% of the stock of Well-Vac. By the second hearing, Mr. West was no longer a stockholder in Well-Vac.
Mr. West testified that Harris Well Service frequently required the use of vacuum trucks and that he has utilized practically everyone in the business. On the issue of alleged service failures, Mr. West recounted three instances. The first was in the middle of July 1981 when a customer for whom Harris Well Service was working called him and instructed him to call Guillo-ry for a vacuum truck. The call was received at approximately 2:30 p.m. and the truck was needed by 6:00 p.m. Mr. West testified that Guillory could not immediately provide a truck and could not guarantee that one would be available before 6:00 p.m. Therefore, he recontacted the customer, told him of Guillory’s inability to provide a truck immediately, and left him with the phone numbers of other carriers. On cross-examination, Mr. West admitted that he did not attempt to contact other carriers and that service was eventually obtained that day. The second and third instances of alleged service failures described by Mr. West occurred in the middle of 1981 and in August of 1982. He was unable to provide specifics about either incident.
The final supporting shipper to testify at the second hearing was Mr. John Cornell, assistant secretary/treasurer and field foreman for Drew Cornell, Inc. Mr. Cornell’s brother, Mr. Robert Cornell, testified for the applicant at the first hearing. The only alleged service failure Mr. John Cornell could recall occurred approximately two years prior to his testimony. He stated that he called Prudhomme who was unable to provide a truck. On cross-examination, Mr. Cornell stated that service has been adequate, but not 100%. When asked if, as' a general rule, he could obtain the necessary services from other carriers if one particular carrier is unable to provide a truck, he responded in the affirmative.
Fourteen certified carriers testified in opposition to the application at the second hearing. All of these witnesses stated that they are willing and able to handle the business of the supporting shippers. In fact, all testified that they need additional business. According to their testimony, none of the carriers has received a complaint from any of the supporting shippers.
After reviewing the foregoing testimony, we conclude that there was no clear showing that the public convenience and necessity would be materially promoted by the issuance of the certificate to Well-Vac. The evidence in support of the applicant consisted merely of vague and undocumented accounts of isolated instances in which a carrier was not immediately available. . But, there was no effort made in any of these instances to contact a competing carrier. Additionally, there was no evidence showing a dissatisfaction by a ship *1129 per with the quality of the services performed by any of the existing carriers. Furthermore, there was no evidence to justify the issuance of a certificate granting statewide authority to transport almost any type of special commodity. Well-Vac’s testimony was limited to the need for carriers in the southwest Louisiana area, and this testimony related merely to two commodities, salt water and mud. In contrast, the testimony in opposition demonstrated that the existing carriers were operating at less than 50% average utilization and that none of the carriers received a single complaint from the supporting shippers about the quality of their services.
In sum, there was no showing that the services provided by the existing carriers was inadequate either in quality or quantity. Therefore, after reviewing the evidence presented to the Commission, we conclude that the Commission could not have reasonably concluded that it was clearly shown that the public convenience and necessity would be materially promoted by the approval of Well-Vac’s application for a certificate of public convenience and necessity. Hence, the issuance of the certificate to Well-Vac was arbitrary and capricious and the district court’s judgment reversing the Commission’s orders was correct.
DECREE
For the reasons assigned, the judgment of the district court is affirmed.

. La.R.S. 45:1192 provides:
If any of the persons, mentioned in R.S. 45:1191, or other party in interest, shall be dissatisfied with any order entered by the commission, adopting, fixing, changing, altering, or modifying, any rate, classification, rule, charge, or general regulation, the dissatisfied person may, within three months after the order made by the commission becomes effective, file in a court at the domicile of the commission, a petition setting forth the particular cause of objection to the order or regulation of the commission complained of. All such cases shall be tried in the same manner as civil cases and shall be given precedence over all other civil cases in the court, and shall be heard and determined as speedily as possible. The court may affirm the order of the commission complained of, or it may change, modify, alter, or set it aside, as justice may require.

. La. Const, art. 4, § 21(E) provides:
Appeal may be taken in the manner provided by law by any aggrieved party or interve-nor to the district court of the domicile of the commission. A right of direct appeal from any judgment of the district court shall be allowed to the supreme court. These rights of appeal shall extend to any action by the commission, including but not limited to action taken by the commission or by a public utility under the provisions of Subparagraph (3) of Paragraph (D) of this Section.

.Well-Vac raises three additional assignments of error. First, Well-Vac maintains that the protest filed by Vacuum Truck Carriers of Louisiana, Inc., an association of individual member carriers, should be stricken because, under the rules of the Commission, an association has no justiciable interest in the proceedings. This argument ignores that the individual member carriers were also protesting the application and that the Commission instructed counsel for these carriers to file one letter in the name of the Association to perfect the rights of all members to protest. Hence, this contention is without merit.
In the second assignment of error, Well-Vac contends that the opposition testimony of certain carriers at the second hearing should have been excluded because the witnesses were not listed on the pre-trial order. There is no merit to this contention. The pre-trial order was prepared solely for trial before Judge Doherty and was not relevant to the further hearing on remand before the Commission.
Well-Vac’s final assignment of error states that the lack of a provision regarding pre-hear-ing discovery prejudiced its interests in the matter. Due to Rule 39 of the Rules of Practice and Procedure of the Louisiana Public Service Commission on depositions, this contention is without merit.